THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC HOLLOWAY, Defendant-Appellant.

First District (5th Division) No. 1—05—3439

Opinion filed July 24, 2009.—Rehearing denied June 30, 2009.

Michael J. Pelletier and Elena B. Penick, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Kathleen Warnick, and Taj Lamar Smith, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a jury trial, defendant Eric Holloway was convicted of burglary and sentenced to seven years' imprisonment. On appeal, defendant contends that the trial court erred by deferring its ruling on his motion *in limine* to bar the State's use of his prior convictions for impeachment purposes until after he testified.[1] We affirm.

Defendant's conviction arose from an incident that took place in Chicago on July 29, 2004. In brief, the State's theory of the case was that around 5:30 a.m., defendant broke into a car without the owner's permission, took items from the car, and attempted to flee from the scene, but was caught and held by the car's owner until the police arrived.

Prior to opening statements at trial, defendant filed a motion *in limine* to prevent the State from introducing evidence of his three prior convictions for drug-related offenses. The trial court deferred ruling on the motion *in limine* until after defendant testified.

At trial, Leonard Green testified that on the morning in question, he looked out the door of the factory where he worked and saw defendant sitting in his car. The car's front windows were broken and the windshield sticker had been removed. Green stated that when he approached the car, defendant punched him in the chest and started running. Green, who never lost sight of defendant, chased defendant into an alley. The men began "tussling" and Green held defendant until the police arrived. Green watched as the police recovered his windshield sticker and receipt book from defendant's back pocket, and

---

[1] We have withdrawn our original decision in this case, dated November 30, 2007, pursuant to our supreme court's supervisory order directing us to vacate the order and reconsider in light of *People v. Patrick*, 233 Ill. 2d 62 (2009). *People v. Holloway*, 231 Ill. 2d 677 (2009).

he noticed broken glass falling from defendant's clothing. Green testified that he had never seen defendant before and did not give him permission to be inside his car or take anything from it.

Green's supervisor, Victor Morales, testified that he saw defendant rummaging through Green's car and noticed that the car windows were broken. Morales saw Green chase defendant, catch him, and hold him until the police arrived. Michael Pyrchala, the vice-president of the factory, testified that he saw Green chase defendant and saw the police remove a vehicle sticker and some other items from defendant's possession. Both Morales and Pyrchala saw glass falling from defendant's clothing when the police searched and arrested him. A Chicago police officer who responded to the scene testified that he noticed the front windows of Green's car were broken and items were tossed around the car, and that he inventoried the windshield sticker and defendant's jacket. Finally, the State introduced exhibits including photographs of the car, the shattered windows, and broken glass inside the car; the jacket defendant was wearing; and the window sticker.

On his own behalf, defendant testified that he had never seen Green before the day in question and that he did not break into Green's car or take the items at issue. He stated that he was on his way to get coffee for his mother and himself, as was his usual early morning routine, when Green approached him and asked whether he had seen anyone going past or "messing" with his car. After defendant responded that he had not, Green hit him in the eye. Defendant testified that he fell to the ground, Green kicked his nose twice, and then, when the police arrived and handcuffed him, an officer hit him in the ribs.

After the defense rested, the State asked to admit certified copies of defendant's convictions for impeachment purposes only. Defense counsel objected, arguing that none of the prior convictions concerned defendant's ability to tell the truth. After noting that the felony convictions fell within the requisite 10-year limitation period and conducting the relevant balancing test, the trial court allowed the State to admit into evidence defendant's two convictions for possession of a controlled substance but refused to admit defendant's conviction for possession of a controlled substance with intent to deliver.

On appeal, defendant contends that the trial court erred in refusing to rule on his motion *in limine* until after he testified. He argues that this error improperly restricted the defense in the planning of its case and interfered with his ability to knowingly and intelligently exercise his right to testify, as he could not make an informed decision as to whether the benefits of testifying outweighed the risks.

■ The State asserts that defendant has waived this issue because he failed to include it in his motion for a new trial. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, given the procedural posture of the instant case, we need not consider whether to apply the waiver doctrine or any of its exceptions. This is because we address the issue of the timing of the trial court's decision on the motion *in limine* pursuant to a supervisory order of our supreme court directing us to do so. See, *e.g.*, *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004) (appellate court properly addressed unpreserved question pursuant to a supervisory order of Illinois Supreme Court).

■ In *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971), our supreme court held that a prior conviction may be used to impeach a witness when (1) the prior conviction was punishable by death or imprisonment in excess of one year, or it involved dishonesty or a false statement; and (2) the date of conviction or release of the witness from confinement, whichever is later, is no more than 10 years before trial. Under *Montgomery*, the trial court must use its discretion to weigh the probative value of the prior conviction against the danger of unfair prejudice to the defendant. *Montgomery*, 47 Ill. 2d at 517. When conducting a *Montgomery* balancing test, factors to be considered by the trial court include the nature of the prior crimes, the length of the criminal record, the age and circumstances of the defendant, and "the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." *Montgomery*, 47 Ill. 2d at 518.

■ The *Montgomery* court did not discuss the proper time for ruling on the admissibility of a prior conviction. However, our supreme court recently addressed the issue in *People v. Patrick*, 233 Ill. 2d 62 (2009). In *Patrick*, our supreme court held that "a trial court's failure to rule on a motion *in limine* on the admissibility of prior convictions when it has sufficient information to make a ruling constitutes an abuse of discretion." *Patrick*, 233 Ill. 2d at 73. The court stated that except in the most complicated cases, a trial court will have enough information prior to trial to be able to weigh the probative value of admitting prior convictions against the danger of unfair prejudice to the defendant. *Patrick*, 233 Ill. 2d at 73. In *Patrick*, the court held that the trial court abused its discretion by refusing to exercise any specific discretion in deciding when to rule, stating, "There is no justification for a trial judge's blanket policy to withhold ruling on all motions *in limine* on the admissibility of prior convictions until after a defendant's testimony." *Patrick*, 233 Ill. 2d at 74.

Here, as in *Patrick*, the trial court's ruling was not based on the facts of the case. Rather, as evidenced by its comments below, the trial

court appeared to have adopted a blanket policy of deferring ruling on motions *in limine* to preclude evidence of prior convictions until after hearing the defendant's testimony:

> "With regard to ruling on the motion, the court is mindful it must conduct a balancing test weighing the probative value against the risk of unfair and substantial prejudice to the defendant.
>
> This court has accepted the guidance of the United States Supreme Court in [*Luce v. United States*, 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984)]. The sole issue in that case being at what point in time can the court, I suppose most intelligently, perform that required balancing test.[2] And that's after the court has heard the testimony of the defendant. I will defer ruling on the motion *in limine* until the defendant has testified."

The instant case did not involve the rare situation where there was insufficient information to conduct a *Montgomery* balancing test before the defendant testified. Instead, we find that prior to trial, and at the very least, prior to the presentation of the defense's case, the trial court had enough information to be able to weigh the probative value of admitting evidence of defendant's prior convictions against the danger of unfair prejudice. See *Patrick*, 233 Ill. 2d at 73; see also *People v. Hogan*, 388 Ill. App. 3d 885, 892 (2009) (applying *Patrick*). Following *Patrick*, we find that the trial court abused its discretion in refusing to decide defendant's motion *in limine* before he testified.

The State, anticipating that we may find an abuse of discretion, argues that any error in the trial court's delaying a decision on the motion *in limine* was harmless, as the evidence of defendant's guilt was overwhelming. Initially, we note that the *Patrick* court, after finding an abuse of discretion, did not conduct the customary harmless-constitutional-error test, which includes examining the other evidence in the case to determine whether overwhelming evidence supports the conviction. *Patrick*, 233 Ill. 2d at 74-75, 83 (Burke, J., concurring in part and dissenting in part); *People v. Patterson*, 217 Ill. 2d 407, 428 (2005) (describing approaches for measuring harmlessness of constitutional error). Instead, the *Patrick* court rejected the State's claim of harmlessness by concluding that not ruling on a *Montgomery* motion prior to the defendant testifying is an error of constitutional magnitude that is inherently prejudicial and that infects the entire

---

[2]Contrary to the trial court's assertion, *Luce* did not address the issue of when to conduct a *Montgomery*-type balancing test but, rather, held that a defendant who does not testify at trial is not entitled to appellate review of the denial of his motion *in limine* seeking to exclude prior convictions. *Luce*, 469 U.S. at 42-43, 83 L. Ed. 2d at 447-48, 105 S. Ct. at 463-64.

proceeding. *Patrick*, 233 Ill. 2d at 74-75, 83 (Burke, J., concurring in part and dissenting in part).

In *Hogan*, we applied *Patrick* to find an abuse of discretion where the trial court had deferred ruling on a *Montgomery* motion, and then went on to address the State's argument that the error was harmless due to overwhelming evidence in support of the defendant's convictions. *Hogan*, 388 Ill. App. 3d at 894. In keeping with *Hogan*'s approach, we consider the State's harmless error argument.

At trial in the instant case, the State presented the testimony of three eyewitnesses and one police officer. The car's owner, Leonard Green, saw defendant sitting in his car, which had broken windows and a missing windshield sticker. Green chased defendant, caught him, and held him until the police arrived. Green then watched police recover his windshield sticker and receipt book from defendant's back pocket, and he saw broken glass falling from defendant's clothing. Green's supervisor, Victor Morales, saw defendant rummaging through Green's car and noticed that the car windows were broken. Morales watched Green chase defendant, catch him, and hold him until the police arrived. Michael Pyrchala, the vice-president of the factory where Green worked, saw Green chasing defendant and saw the police recovering a vehicle sticker and some other items from defendant. Both Morales and Pyrchala saw glass falling from defendant's clothing when the police searched and arrested him. The police officer testified that the front windows of Green's car were broken, that items were tossed around inside the car, and that he inventoried the windshield sticker and defendant's jacket. Finally, the State's evidence included photographs of the car, the shattered windows, and broken glass inside the car; the jacket defendant was wearing; and the window sticker recovered from defendant.

■ We find that the evidence presented at trial in support of defendant's conviction was overwhelming. Therefore, the admission of defendant's prior convictions for possession of a controlled substance would not have been so crucial a factor in the jury's determination of defendant's guilt that the verdict would have been different had the evidence not been admitted. See *People v. Jackson*, 299 Ill. App. 3d 104, 114 (1998) (where evidence of guilt was overwhelming, prejudice caused by *Montgomery* error did not outweigh probative value of prior conviction in considering defendant's credibility); *People v. Woodard*, 276 Ill. App. 3d 242, 245-46 (1995) ("evidence of defendant's guilt was overwhelming; therefore, even if this court found improper [*Montgomery*] impeachment, we would find the error harmless"). Given the overwhelming evidence of defendant's guilt, we conclude that the trial court's decision to defer its ruling on defendant's motion *in limine*

was harmless beyond a reasonable doubt. Accordingly, we affirm defendant's conviction.

For the reasons explained above, we affirm the judgment of the circuit court of Cook County.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.